Kevin Lu
2361 Brandini Dr.
Dublin, CA 94568
(408) 598-1892
kevinxinlu@gmail.com
*pro se* Plaintiff

FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

DEC - 8 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Kevin X. Lu<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>China XD Plastics Company Limited, Jie Han, and Dahe "Taylor" Zhang<br><br>　　　　　Defendants. | 2:25-cv-02440-RFB-EJY<br><br>Case No.:_____<br><br>COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

　　　Plaintiff Kevin X. Lu ("Plaintiff"), appearing *pro se*, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, a review of the filings made by China XD Plastics Company Limited ("China XD" or the "Company") with the United States Securities and Exchange Commission ("SEC"), press releases, and other public reports.

1
COMPLAINT

## NATURE OF THE ACTION

1. This is a securities fraud action aimed at recovering damages caused by Defendants' fraudulent scheme to evade U.S. securities laws and jurisdiction without compensating shareholders.

2. This case involves a "Bait and Switch" scheme orchestrated by the Company's Chairman and CEO, Jie Han ("Han"), and his lieutenant and Chief Financial Officer, Dahe "Taylor" Zhang ("Zhang"). Han engaged in a quintessential self-dealing transaction where he stood on both sides of the deal: as the Chairman representing the sellers (shareholders) and as the sole owner of the "Buyer Group." To induce shareholders to support a "going private" transaction, Defendants entered into a Merger Agreement on June 15, 2020, promising to acquire all outstanding shares for $1.20 per share in cash.

3. However, after securing shareholder approval on November 5, 2020, Defendants changed their strategy. Rather than paying the $1.20 per share to take the Company private lawfully, Defendants manufactured a pretextual termination of the Merger Agreement. On May 12, 2021, Defendant Zhang and Han both signed and filed Amendment No. 3 to Schedule 13E-3 with the SEC, falsely claiming the deal was terminated due to breaches by the Buyer Group. This disclosure was a material "half-truth": it omitted the specific nature of the breaches and concealed the Defendants' true motivation.

4. The true motivation was financial evasion. Defendant Han, aided and abetted by Defendant Zhang, decided to take the Company private "for free" by simply refusing to comply with SEC filing requirements. Following the filing of the 13E-3 on May 12, 2021, the Company ceased filing periodic reports, allowed its stock to be delisted from Nasdaq, and ultimately suffered a revocation of registration by the SEC.

5. To finalize the theft of the Company's value, Defendants subsequently dismissed the Company's Registered Agent in Nevada and ceased all filings with the Nevada Secretary of State. This calculated maneuver severed the U.S. holding company from its operating assets in China, leaving U.S. investors with no recourse while Defendant Han retained full control of the business. As a direct result of this "Go Dark" scheme, the tradeable market for the Company's stock was destroyed. Instead of receiving the agreed-upon $1.20 per share, Plaintiff is left with 340,899 shares of illiquid, delisted stock with a value of effectively zero.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Defendant China XD Plastics Company Limited is a corporation incorporated under the laws of the State of Nevada. Furthermore, the Merger Agreement at the center of this dispute was governed by Nevada Revised Statutes, and the acts and omissions giving rise to the claims occurred, in part, within this District by virtue of the Company's corporate domicile and legal obligations in Nevada.

## PARTIES

9. Plaintiff Kevin Lu is an individual investor who owns 340,899 shares of China XD Plastics Company Limited common stock. Plaintiff's ownership consists of two tranches: (a) 150,000 shares purchased prior to the fraudulent termination of the Merger on May 12, 2021

("Pre-Fraud Shares"); and (b) 190,899 shares purchased between May 12, 2021, and the delisting of the stock ("Post-Fraud Shares").

10. Defendant China XD Plastics Company Limited is a Nevada corporation with its principal executive offices located in Harbin, China. The Company's common stock was registered with the SEC pursuant to Section 12(b) of the Exchange Act and traded on the Nasdaq Global Market under the ticker symbol "CXDC."

11. Defendant Jie Han ("Han") is, and was at all relevant times, the Chairman of the Board of Directors and Chief Executive Officer of the Company. Han was also the beneficial owner of "Faith Dawn Limited" (Parent) and "Faith Horizon Inc." (Merger Sub), the entities attempting to acquire the Company (collectively, the "Buyer Group"). Because Defendant Han controlled the Buyer Group, he stood on both sides of the Merger transaction.

12. Defendant Dahe "Taylor" Zhang ("Zhang") was the Chief Financial Officer of the Company during the relevant period until his resignation on December 9, 2021. Zhang maintained the Company's office in New York and served as the signatory for the Company's SEC filings, including the fraudulent Schedule 13E-3 filed on May 12, 2021.

## SUBSTANTIVE ALLEGATIONS

### A. The "Bait": The Promise of $1.20 Per Share

13. On June 15, 2020, the Company announced it had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub").

14. Under the terms of the Merger Agreement, Parent—which was wholly owned by Defendant Han—agreed to acquire all outstanding common shares of the Company for a cash consideration of $1.20 per share.

15. On November 5, 2020, the Company held a special meeting of stockholders where the Merger Agreement was approved by approximately 87.7% of the combined voting power of the Company.

16. Following shareholder approval on November 5, 2020, the Company's stock price became anchored to the Merger Consideration, actively trading in a narrow band between $1.18 and $1.19 per share. This pricing behavior reflected the efficient market's reliance on Defendants' statements and the high expectation that the transaction would close at the agreed $1.20 price, thereby establishing the baseline value of Plaintiff's holdings immediately prior to the fraudulent termination.

B. **The Misrepresentation: the "Half-Truth" Termination Filing**

17. Despite the shareholder approval, the Company and Han did not close the Merger. On May 12, 2021, Defendant Zhang and Han signed and filed Amendment No. 3 to the Transaction Statement on Schedule 13E-3 with the SEC ("13E-3"). In this filing, Zhang and Han certified that the information set forth was "true, complete and correct."

18. The filing incorporated a "Notice of Termination" dated May 8, 2021, which vaguely stated the Company was terminating the agreement "*based on Parent and Merger Sub's breaches of the merger agreement which breaches have given rise to the failure of several conditions.*"

19. These statements were materially false and misleading because they constituted a "half-truth." Having chosen to speak regarding the reason for the termination, Defendants had a duty to disclose the full truth. Defendants deliberately omitted the specific nature of the alleged breaches to conceal that the "breach" was merely a mechanism to avoid the $1.20 payment to shareholders. In reality, Defendants planned a "Go Dark" scheme to take the Company for free.

### C. The "Switch": Defendants Facilitate the "Go Dark" Scheme

20. Following the filing of the 13E-3 that terminates the Merger, Defendants executed a scheme to permanently evade U.S. disclosure obligations. Defendant Zhang, acting as Han's alter-ego, facilitated this scheme by overseeing the cessation of financial reporting.

21. The Gatekeeper Resigns: On December 9, 2021, Defendant Zhang resigned as Chief Financial Officer "effective immediately." His abrupt departure serves as strong circumstantial evidence of scienter, as he sought to exit the conspiracy after the termination was complete but before the final regulatory penalties were imposed.

22. Cessation of Reporting: Immediately following Defendant Zhang's filing of the termination notice, the Company executed a systematic refusal to comply with its periodic filing obligations under the Exchange Act. The Company failed to file any periodic reports on Form 10-K or 10-Q for any period subsequent to the fiscal year ending December 31, 2020. This was not an administrative oversight; between May 2021 and December 2021, the Company received five separate "Notices of Delisting or Failure to Satisfy a Continued Listing Rule" from Nasdaq regarding its reporting failures. Defendants deliberately ignored these repeated warnings and refused to cure the deficiencies, thereby ensuring the stock would be delisted to facilitate the "Go Dark" scheme.

23. Delisting and Revocation: As a direct result of the intentional failure to file periodic reports, Nasdaq filed a Form 25 on February 9, 2022, striking the Company's securities from listing. On February 13, 2023, the SEC issued an Order revoking the registration of the Company's securities pursuant to Section 12(j) of the Exchange Act, finding the Company in default.

### D. The Final Act: Severing Legal Ties to Shield Stolen Assets

24. Following the SEC's revocation of the Company's securities registration on February 13, 2023, Defendants executed the final phase of the "Go Dark" scheme to insulate themselves from liability and permanently misappropriate shareholder value.

25. Abandonment of Corporate Compliance: Commencing in 2024, the Company knowingly ceased filing the mandatory Annual List with the Nevada Secretary of State. On December 31, 2024, the Company allowed its Registered Agent to resign without appointing a successor. As a result, the State of Nevada revoked its active entity status.

26. Since January 2025, the Company has effectively dismantled its legal presence in the United States, thereby insulating the Defendants from accountability to shareholders.

27. The Company is a holding company with no operations and no bank account in the United States. By abandoning the Nevada corporate shell, Defendants intentionally dismantled the legal bridge between the U.S. public entity (which Plaintiff owns) and the valuable operating subsidiaries in China (which Defendant Han controls). This maneuver was designed to render any U.S. court judgment practically unenforceable.

28. Total Communication Blackout: Simultaneously with its abandonment of corporate compliance, the Company terminated all communication channels with the U.S. shareholders. Between January 2025 and April 2025, Plaintiff made six separate attempts to reach the Company via telephone and emails to obtain information as a shareholder. The phone calls and emails went unanswered, confirming that the Company has disconnected its investor relations infrastructure entirely.

### E. Unjust Enrichment and Ongoing Concealment

29. Unjust Enrichment: The fraud has resulted in a grotesque disparity between the Plaintiff and the Defendants. While Plaintiff's equity value has been wiped out (rendering his shares worthless), Defendant Han continues to extract significant financial benefits from the Company's operating assets. Upon information and belief, based on the Company's historical executive compensation structures, Defendant Han continues to draw an annual salary of approximately $800,000 from the Company's operating subsidiaries in China, effectively financing his lifestyle with the assets he stole from U.S. shareholders.

30. Asset Stripping: Upon information and belief, Defendant Han has utilized the lack of oversight following the delisting to transfer valuable business units and assets away from the Company's operating subsidiaries in China and into new entities solely controlled by him or his affiliates. This corporate shuffling is designed to ensure that even if U.S. shareholders could pierce the corporate veil, the original subsidiaries would be empty shells.

31. Complete Blackout of Information: Since the Company eliminated its disclosure obligations via the delisting and revocation, it has made no disclosures to its shareholders. The Company has provided no financial statements, no annual reports, and no updates regarding operations, effectively operating as a private fiefdom for Defendant Han despite having public shareholders who were never compensated.

32. Evasion of Communication: The Company's "Go Dark" scheme is further evidenced by its refusal to communicate with its owners. Plaintiff has made multiple attempts to contact the Company via email and telephone to obtain updates on the business and the status of the shares. All such attempts have been futile; the Company's listed email addresses are unresponsive, and the phone numbers are unreachable. Defendants have deliberately cut all lines of communication to conceal their ongoing theft of the Company's value.


## F. Loss Causation and Damages

33. Defendants' fraudulent scheme and material misrepresentations directly caused Plaintiff's loss. By falsely terminating the Merger Agreement to avoid the $1.20 per share payment and subsequently destroying the public market for the shares through the "Go Dark" scheme, Defendants have rendered Plaintiff's 340,899 shares worthless.

34. Reliance on the Integrity of the Market: With respect to the 190,899 shares purchased after the May 12, 2021 termination notice, Plaintiff relied on the presumption that the market price of China XD stock reflected all public information. Because Defendants concealed their true intent to dismantle the Company's compliance structure and "go dark," the market price was artificially inflated. Had Defendants truthfully disclosed on May 12, 2021, that they intended to cease filings and abandon the U.S. jurisdiction, the stock would have traded at or near zero. Plaintiff would not have purchased these additional shares but for the Defendants' material nondisclosure.

35. But for the Defendants' fraud, Plaintiff would have received the Merger Consideration of $1.20 per share of the Pre-Fraud Shares and would not have purchased the worthless Post-Fraud Shares.

## COUNT I
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. Defendant Zhang, Chief Financial Officer of the Company, acted as the signatory of the May 12, 2021 Schedule 13E-3 and was effectively the "maker" of the false statements contained therein.

38. Defendants Han and Zhang (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff.

39. Specifically, Defendant Zhang knew, or was reckless in not knowing, that the termination of the Merger was pretextual and part of a scheme to delist the Company without compensating shareholders. Despite this, he signed the 13E-3 certifying its accuracy. Defendants' fraudulent intent is further confirmed by their post-revocation conduct, including the dismissal of the Nevada Registered Agent, to abandon the U.S. jurisdiction entirely.

### COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against Defendants Han and Zhang)

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. Defendant Han acted as a controlling person of the Company within the meaning of Section 20(a) by virtue of his voting power of approximately 70% and his position as CEO.

42. Defendant Zhang acted as a controlling person of the Company within the meaning of Section 20(a) by virtue of his position as Chief Financial Officer, his presence in the Company's New York offices, and his authority over the Company's SEC filings.

43. By reason of such conduct, Defendants Han and Zhang are liable pursuant to Section 20(a) of the Exchange Act.

### COUNT III
### Common Law Fraud
### (Against All Defendants)

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. False Representation: In the Schedule 13E-3 filed on May 12, 2021, Defendants represented that the Merger was terminated due to "breaches" by the Buyer Group. This was a false representation of material fact, as the true reason for termination was a strategic decision to evade the payment obligation and "go dark."

46. Knowledge of Falsity: Defendants Han and Zhang knew this representation was false at the time it was made. Defendant Han controlled both the "breaching" Buyer and the Company and thus knew the "breach" was a pretext.

47. Intent to Induce Reliance: Defendants made this misrepresentation with the intent to induce Plaintiff and other shareholders to continue holding their shares (or purchasing new shares) under the false belief that the Company remained a legitimate public entity, thereby preventing shareholders from taking immediate legal action to enforce the merger or liquidate their positions.

48. Justifiable Reliance: Plaintiff justifiably relied on the Defendants' public filings with the SEC and the presumption of market integrity. Plaintiff was unaware of the "Go Dark" scheme concealed by the Defendants.

49. Damages: As a direct and proximate result of Defendants' fraud, Plaintiff suffered damages in the form of the total loss of value of the 340,899 shares, which are now illiquid and worthless.

50. Punitive Damages: Defendants' conduct was malicious, fraudulent, and oppressive, demonstrating a conscious disregard for the rights of Plaintiff. Accordingly, Plaintiff is entitled to an award of punitive damages under Nevada Revised Statutes § 42.005.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. Entering judgment in favor of Plaintiff and against all Defendants, jointly and severally.

B. Awarding Plaintiff actual damages in an amount to be proven at trial.

C. Awarding punitive damages against Defendants for Common Law Fraud as allowed by Nevada law.

D. Awarding prejudgment and post-judgment interest as allowed by law.

E. Awarding Plaintiff reasonable costs and expenses incurred in this action.

F. Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

Dated: December 5, 2025

*(signature)*

KEVIN X. LU

2361 Brandini Dr.
Dublin, CA 94568
(408) 598-1892

kevinxinlu@gmail.com

*Pro Se* Plaintiff